IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-03084-PAB-STV

UNITED STATES OF AMERICA, ex rel. JAMES HERON,

      Plaintiff,

v.

NATIONSTAR MORTGAGE LLC,[1]

      Defendant.

_____

**ORDER**
_____

      This matter comes before the Court on Nationstar Mortgage LLC's Motion to

Dismiss [Docket No. 137].  Relator responded [Docket No. 141], and defendant replied

[Docket No. 144].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND[2]

      Relator brings a *qui tam* action pursuant to the False Claims Act ("FCA") to

recover damages and civil penalties from defendant on behalf of the United States.

Docket No. 136 at 4, ¶ 1.  Relator alleges a scheme by defendant to submit forged and

fraudulent promissory notes in foreclosure proceedings while receiving federal funds

---

[1] The second amended complaint additionally lists as defendants Aurora Loan
Services, LLC; Aurora Bank FSB; Aurora Commercial Corp., as successor to Aurora
Bank FSB; Medved Dale Decker & Deere, LLC; Dale & Decker, LLC; Toni Marie Owan;
Holly Ryan; Jennifer L. Reynolds; Penny Dietrich-Smith; and Jamie G. Siler.  *See*
Docket No. 136 at 1.  However, plaintiff states that he dismissed these defendants
earlier in the case and is only bringing claims against Nationstar Mortgage LLC
("Nationstar") at this time.  *Id.* at 4 n.1.  Accordingly, the Court lists Nationstar as the
only remaining defendant.

[2] The following facts are from relator's second amended complaint [Docket No.
136].  The Court presumes them to be true for the purpose of ruling on defendant's
motion to dismiss.

designed to keep borrowers in their homes.  *Id.* at 4-5, ¶¶ 2, 5.

Relator lost his home through foreclosure due to the illegal acts of defendant and Aurora Loan Services, LLC, Aurora Banks FSB, and Aurora Commercial Corp., as successor to Aurora Bank FSB (collectively, "Aurora").  *Id.* at 4, 9, ¶¶ 1, 16, n.1. Defendant purchased billions of dollars of loan servicing packages from entities like Aurora, often taking over foreclosure proceedings initiated by or on behalf of Aurora, its predecessor.  *Id.* at 11, 42, ¶¶ 25, 90.  Between 2008 and March 2011, Aurora attempted to foreclose on relator's home a number of times.  *Id.* at 11-13, ¶¶ 26-32. Aurora, by itself and through law firms, claimed to own relator's loan in eleven different documents, purporting to prove such ownership though handwritten endorsements to "Aurora Loan Services" on various copies of the promissory note.  *Id.* at 11, ¶ 26. Relator became suspicious of Aurora's and the law firm's dealings with his foreclosure and contested the authenticity of the promissory note and Aurora's ownership of the loan in the District Court for Douglas County, Colorado in 2012; defendant Nationstar was later substituted in for Aurora as plaintiff in the proceeding.  *Id.* at 13-14, ¶ 32.  In the proceeding, Nationstar, after Aurora produced two other versions of the promissory note, produced a third version of the promissory note and Nationstar's witness testified that Nationstar and Aurora only serviced the mortgage loan.  *Id.* at 14, ¶ 33.  Relator alleges that the third version of the promissory note was a forgery used to cover up previous forgeries.  *Id.*

Relator alleges that Aurora and Nationstar use similar forged, handwritten endorsements to foreclose on hundreds of other borrowers in Colorado.  *Id.* at 10, ¶ 24. Relator outlines the following illegal scheme by defendant.  Defendant owns billions of dollars of loan servicing rights.  *Id.* at 5, ¶ 6.  Defendant represents to courts that it has

all necessary loan records and documents required to legally foreclose on the homes it initiates foreclosure proceedings on, and that the documents are genuine. *Id.* However, this is false. *Id.* Instead, many of the loan documents are deficient. *Id.* In order to cover up these deficiencies, defendant submits forged promissory notes to foreclosure proceedings. *Id.* at 6, ¶ 7. These forgeries take the form of promissory notes filed by defendant for the same property in multiple foreclosure proceedings that are irreconcilable with promissory notes previously filed by defendant. *Id.* Defendant has forged the promissory notes so that it has the requisite endorsement to certify to the courts that the promissory note being used in the foreclosure proceeding is the "true and correct" copy. *Id.* Relator conducted an independent investigation of defendant and Aurora's foreclosure proceedings and uncovered hundreds of fraudulent endorsements in Aurora's foreclosures, *id.* at 37, ¶ 83; relator provides specific photographic examples of the fraud. *Id.* at 39-54, ¶¶ 86-114.

The government instituted a number of measures to stabilize the housing and credit markets and assist troubled borrowers after the onset of the 2008 housing crisis. *Id.* at 83, ¶ 161. As relevant to this case, the government established (1) the Troubled Asset Relief Program ("TARP") to, *inter alia,* promote mortgage loan modification programs; (2) the Home Affordable Modification Program ("HAMP"), to use TARP funds to provide incentives for mortgage servicers to modify eligible first-lien mortgages; and (3) various other programs to further stabilize the housing market by facilitating second-lien mortgage loan modifications and extinguishment, by encouraging foreclosure alternatives, and by making other foreclosure prevention services available to the marketplace. *Id.* at 84, ¶¶ 162-65.

On May 28, 2009, defendant entered into a Commitment to Purchase Financial

Instrument and Service Participation Agreement ("SPA") with Fannie Mae, which stated that defendant would participate in the HAMP program on the terms and conditions of the SPA. *Id.* at 86, ¶ 175.  In the SPA, defendant stated that it was in compliance with "all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements . . . designed to prevent unfair, discriminatory or predatory lending practices . . . ." *Id.* at 87, ¶ 179(a).  Defendant further acknowledged that "the provision of false or misleading information to Fannie Mae or Freddie Mac in connection with the [HAMP] Program may constitute a violation of . . . the civil False Claims Act[,]" and covenanted to disclose "any credible evidence, in connection with the Services, that a management official, employee, or contractor of Servicer has committed, or may have committed, a violation of the referenced statutes." *Id.* at 88, ¶ 180.  In order to continue to participate in the HAMP program, defendant executed annual certifications to the same effect. *Id.* at 89, ¶ 182.  However, the certifications that defendant made with respect to the HAMP program were false at the time of making and continued to be false because defendant was conducting foreclosures that were commenced though the submission of fraudulent and forged promissory notes. *Id.* at 89-90, ¶ 184.

Relator also alleges that defendant failed to meet the loss mitigation requirements of the Federal Housing Administration ("FHA") and defendant failed to implement a quality control program required by the FHA, thus making defendant's assertion in the SPA that it was in compliance with all federal laws and regulations false and resulting in insurance payments from the FHA to defendant that were made based on fraudulent inducements. *Id.* at 90-94, ¶ 185-95.  Additionally, defendant failed to notify the government of both its own violations and those made by Aurora and certain

law firms, in contravention of the requirements of the SPA.  *Id.* at 95, ¶ 197.

Relator brings two claims: (1) violation of the FCA, 31 U.S.C. § 3729(a)(1)(D), by engaging in illegal foreclosure practices and submitting false claims for payment under TARP and HAMP programs, and (2) violation of the FCA, 31 U.S.C. § 3729(a)(1)(C), by conspiracy to violate the FCA.  *Id.* at 97-100, ¶¶ 202-213.

On November 19, 2020, defendant filed a motion to dismiss both claims pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 137.  Defendant argues that relator's claims (1) are prohibited by the public disclosure bar; (2) are not plead with the particularity required by Fed. R. Civ. P. 9(b); and (3) fail to plead the elements of an FCA conversion and conspiracy claim.  *Id.* at 5.  Relator responded, Docket No. 141, and defendant replied.  Docket No. 144.

## II.  LEGAL STANDARD

The Court's function on a Rule 12(b)(6) motion for failure to state a claim is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim.  Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  A court must accept all the well-pleaded allegations of the complaint as true and must construe them in a light most favorable to the plaintiff.  *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that

the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal

quotation marks and alteration marks omitted).  Thus, even though modern rules of

pleading are somewhat forgiving, "a complaint still must contain either direct or

inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks

omitted).

## III. ANALYSIS

Defendant argues that this case should be dismissed because (1) the public

disclosure bar applies, (2) relator's complaint fails to plead the particularity required by

Fed. R. Civ. P. 9(b), and (3) relator did not sufficiently plead the elements of an FCA

conversion or conspiracy claim.  Docket No. 137 at 5.

The FCA "covers all fraudulent attempts to cause the government to pay out

sums of money." *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 736

(10th Cir. 2019) (quoting *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*,

543 F.3d 1211, 1217 (10th Cir. 2008)).  An action can either be brought by the

government itself or "'a private person (the relator) may bring a qui tam' suit on behalf of

the government and also for herself alleging that a third party made fraudulent claims

for payment to the government." *Id.* (quoting *Vt. Agency of Nat. Res. v. United States*

*ex rel. Stevens*, 529 U.S. 765, 769 (2000)).  Relators are entitled to a portion of the

recovery they obtain.  *Id.*

The FCA states in relevant part that

any person who--
(A) knowingly presents, or causes to be presented, a false or fraudulent
claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record
or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

. . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).  Relator alleges that defendant violated §§ 3729(a)(1)(C) and

(D).  Docket No. 136 at 94-95.

The Court first addresses defendant's argument that relator's claims are

prohibited by the public disclosure bar.  The FCA limits the rights of a relator to bring an

action in certain circumstances:

[t]he court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).  This is known as the "public disclosure bar."  *Reed*, 923

F.3d at 736-37.  The public disclosure bar "aims to strike 'the golden mean between'

encouraging 'whistle-blowing insiders with genuinely valuable information' to come

forward while discouraging 'opportunistic plaintiffs who have no significant information

to contribute of their own.'"  *Id.* at 738 (quoting *United States ex rel. Fine v. Sandia*

*Corp.*, 70 F.3d 568, 571 (10th Cir. 1995)).  To determine if the public disclosure bar

applies, a court considers "(1) whether the alleged public disclosure contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made public within the meaning of the FCA; and (3) whether the relator's complaint is based upon this public disclosure." *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009) (internal quotation marks and alteration omitted).

### A.  Motion to Dismiss Versus Motion for Summary Judgment

Prior to 2010, the public disclosure bar was jurisdictional. *See United States ex rel. Booth v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1173 (10th Cir. 2007) (noting that, as of 2007, the public disclosure bar was jurisdictional).  Therefore, where the parties relied on evidentiary materials outside the complaint, the Tenth Circuit instructed courts to convert the motion into one for summary judgment. *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1159 (10th Cir. 1999) ("Jurisdictional challenges brought under [31 U.S.C. § 3730(e)(4)] arise out of the same statute creating the cause of action (i.e., the False Claims Act) and are thus necessarily intertwined with the merits of the case. . . .  As such, the court's jurisdictional inquiry should be resolved under Federal Rule of Civil Procedure 12(b)(6) or, after proper conversion into a motion for summary judgment, under Rule 56." (internal citation omitted)).

In 2010, Congress amended the statute and removed the reference to jurisdiction; the "federal courts of appeals that have confronted the issue have unanimously held that the 2010 'amendments transformed the public disclosure bar from a jurisdictional bar to an affirmative defense.'" *Reed*, 923 F.3d at 737 n.1 (quoting *United States ex rel. Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017)). Dismissal of a complaint based on an affirmative defense "is only [proper] when the

8

complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).  In *Reed*, the Tenth Circuit declined to determine whether the public disclosure bar was jurisdictional or an affirmative defense because, *inter alia*, the appellee had properly raised it as a defense in its motion to dismiss.  *Reed*, 923 F.3d at 737 n.1.  The district court in *Reed* converted the portion of appellee's motion to dismiss regarding the public disclosure bar to a motion for summary judgment and permitted the appellant to file additional evidence.  *Id.* at 741.  Whether the bar was jurisdictional or an affirmative defense was immaterial in *Reed*.  *Id.* at 737 n.1.

Ordinarily, when a district court relies on material outside the complaint to resolve a Rule 12(b)(6) motion, it must convert it into one for summary judgment.  *Id.* at 753.  However, courts may consider not only the challenged complaint itself, but also attached exhibits and documents incorporated into the complaint by reference.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  The "outside materials" that defendant argues warrant the application of the public disclosure bar are (1) the consent order Aurora entered into with the Office of Thrift Supervision ("OTS"); (2) consent orders defendant entered into with the Division of Banks; (3) *United States v. Farkas*, a criminal case against an individual for running a bank and TARP fraud scheme; and (4) a mortgage fraud notice provided by the Federal Bureau of Investigation ("FBI") and the Mortgage Bankers Association.  Docket No. 137 at 6-7.  The complaint provides (1) a link to the consent order defendant entered into with the Division of Banks, Docket No. 136 at 96 n.16; (2) a citation to *United States v. Farkas*, excerpts from the trial transcript, and a link to a press release about the case, *id.* at 33-34, ¶¶ 76-77; and (3) a link to the FBI mortgage fraud notice.  *Id.* at 97 n.17.  Relator

does not object to the Court considering these materials.  *See* Docket No. 141 at 6-9. Therefore, the Court will consider these materials without converting defendant's motion to dismiss into one for summary judgment.  *Cf. Alvarado*, 493 F.3d at 1215 ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (internal quotation omitted)).

## B.  "Substantially the Same" Allegations

Defendant argues that the public disclosure bar prohibits this action because substantially the same allegations have been publicly disclosed.  Docket No. 137 at 5. Specifically, defendant argues that the public disclosures were (1) the consent order Aurora entered into with the OTS; (2) consent orders defendant entered into with the Division of Banks; (3) *United States v. Farkas*, a criminal case against an individual for running a bank and TARP fraud scheme; and (4) a mortgage fraud notice provided by the FBI and the Mortgage Bankers Association.  *Id.* at 7.  Relator argues that none of these public disclosures identified the scheme he alleges: forged and fraudulent promissory notes for the purposes of litigating foreclosures.  Docket No. 141 at 6-8.

Relator does not dispute that the alleged public disclosures came from a source listed in the FCA or that they were made public within the meaning of the FCA.  *See id.* at 6-9.  The issue then is "whether the relator's complaint is based upon this public disclosure."  *In re Nat. Gas Royalties*, 562 F.3d at 1039 (internal quotation marks and citation omitted).  This prong asks "whether the *qui tam* complaint was based upon, meaning supported by, the publicly disclosed allegations or transactions."  *Id.* at 1040 (internal quotation marks and citation omitted); *see also Reed*, 923 F.3d at 745 (finding that pre-2010 Tenth Circuit precedent for determining substantially-the-same inquiry

10

applies after 2010 amendment to FCA).  The test is whether there is "substantial identity" between the public disclosure and the *qui tam* complaint.  *In re Nat. Gas Royalties*, 562 F.3d at 1040.  "[T]he operative question is whether the public disclosures were sufficient to set the government 'on the trail of the alleged fraud without [the relator's] assistance.'"  *Reed*, 923 F.3d at 744 (quoting *Fine*, 70 F.3d at 571).  A public disclosure need not identify a defendant by name in order for there to be substantial identity.  *Id.* at 745 ("[T]he government's nose for fraud may be sensitive enough to pick up the scent even if the public disclosures did not identify any specific company." (internal quotation marks and alteration omitted)).  The public disclosure bar applies if "the essence of the relator's allegations was derived from a prior public disclosure."  *Id.* (internal quotation marks omitted).  Additionally, a complaint can be substantially the same even when only based in part on public disclosures.  *Fine*, 70 F.3d at 572 ("In *Precision*, however, we construed the 'based upon' test broadly . . . and concluded that section 3730(e)(4)(A) bars even those qui tam complaints which are based only *in part* upon public disclosures.").  The Court will consider each public disclosure.

*United States v. Farkas*.  In *Farkas*, the government prosecuted executives of a mortgage lender for a fraudulent TARP scheme that used fake promissory notes to double- and triple-sell mortgage loans.  Docket No. 136 at 33-34, ¶¶ 76-77.  The complaint alleges that Farkas used "fake promissory notes" in order to commit bank and TARP fraud.  *Id.*  The complaint also alleges that Farkas used fake promissory notes to secure loans when the promissory notes had in fact been sold to someone else.[3]  *Id.*  In this case, plaintiff alleges that defendant used fraudulent promissory notes

_____

[3] Relator argues in his response to defendant's motion to dismiss that the complaint references *United States v. Farkas* to provide an example of how the court in

to effectuate foreclosures.  *Id.* at 5, ¶ 5.  While the purpose of the fake promissory

notes was different in *Farkas*, the allegation of the use of fake notes is the same in

*Farkas* and this case.

　　　*Consent Orders*.  The complaint alleges that Aurora entered into a consent order

with OTS due to "unsafe or unsound practices" in, *inter alia*, Aurora's handling of

foreclosure proceedings.  *Id.* at 95-96, ¶ 199.  The alleged practices included filing

affidavits and other "mortgage related documents" that were not properly notarized and

"litigat[ing] foreclosure and bankruptcy proceedings and initiat[ing] non-judicial

foreclosure proceedings without always ensuring that each promissory note and

mortgage document were properly endorsed or assigned . . ."  *Id.* at 96 n.15.  Relator

argues that defendant distanced itself from Aurora's wrongdoing and that the consent

order did not deal with the same allegations in this case: fake promissory notes used for

the purpose of litigation.  *See* Docket No. 141 at 7-8.  Relator alleges that defendant is

Aurora's successor.  Docket No. 136 at 42, ¶ 90.  The consent order clearly concerned

foreclosure litigation and improper promissory notes.

　　　Relator further alleges that defendant "avoided a similar Consent Order with

OTS, but entered into one or more similar consent orders with various state attorneys

general[,]" and that defendant "likely found much relief in agreeing to the liability

imposed by the consent order it entered because it successfully concealed its outright

fraud from the governmental authorities."  *Id.* at 96, ¶¶ 199-200.  Relator alleges that

defendant entered into a consent order because of its improper use of promissory

---

*Farkas* rejected a defendant's argument the fake promissory notes were irrelevant.
Docket No. 141 at 7.  The purpose relator had for placing these allegations in the
complaint are immaterial to the Court; the Court is not bound by relator's interpretation
of his allegations.

notes in foreclosure litigation.[4]

  *FBI mortgage fraud notice*.  Relator alleges that the FBI and Mortgage Bankers Association jointly prepared a mortgage fraud notice which states that the submission of forged and fraudulent promissory notes in furtherance of a foreclosure violates at least eight federal statutes.  *Id.* at 97, ¶ 204.  Defendant argues that this was a substantially similar public disclosure that actually identifies defendant, Docket No. 137 at 8, while relator argues that the notice was a generic warning of the criminal statutes that apply to mortgage fraud, and the notice does not actually identify defendant. Docket No. 141 at 8.  The link relator provides for the notice goes to "page not found" on the FBI website, *see Page not found*, Fed. Bureau of Investigation, https://goo.gl/qaNWIX (last visited Sept. 15, 2021, 10:47 a.m.), and the Court is therefore unable to determine whether the notice identifies defendant or not.

  The question in this case is whether the public disclosures are sufficiently specific for the public disclosure bar to apply.  At a minimum, the Court finds that the public disclosures discussed above were adequate to put the government on notice of fraud in the mortgage industry.  However, in *Reed*, the Tenth Circuit expressed hesitancy at analyzing the plaintiff's allegations at their most general level.  *Reed*, 923 F.3d at 748 n.12.  The court looked to the plain meaning of "substantially the same" and held that it "connotes a standard that requires only the *essentials* of the relator's allegations to be identical to or of an identical type as those disclosed publicly."  *Id.*  The

---

[4] As with the description of *United States v. Farkas*, relator argues that defendant mischaracterizes the purpose for which these allegations are in the complaint and that they are there to show how defendant's actions went beyond "robo-signing."  Docket No. 141 at 7-9.  However, it is a determination for the Court of whether the allegations in the complaint are substantially similar to the public disclosures.

court declined to "put a finer point on this issue" because only a "hyper-specific reading that requires near complete identity of allegations" would support the reading put forth by the relator in an attempt to avoid substantial similarity, and precedent foreclosed a hyper-specific reading.  *Id.*

Considering the information from these public disclosures, the Court finds that the disclosures were sufficient to "set the government on the trail" of defendant's alleged fraud without relator's assistance.[5]  *See id.* at 749.  Relator in this case argues for a "hyper-specific reading" that precedent prohibits.  The public disclosures showed that (1) the government was aware of the use of forged and fraudulent promissory notes in furtherance of foreclosures (FBI notice); (2) Aurora (defendant's predecessor) entered into a consent decree due to litigating foreclosures without ensuring the promissory note and mortgage document were properly endorsed or assigned (Aurora consent decree with OTS); (3) defendant entered into a consent decree similar to Aurora's with the Division of Banks (defendant's consent decree); and (4) the use of fake promissory notes to secure a loan when the promissory note had already been sold was an issue that had been litigated (*United States v. Farkas*).  These disclosures are substantially the same as the allegations relator makes in the complaint.

---

[5] In its reply, defendant identifies other public disclosures that it alleges are substantially the same as relator's allegations.  *See* Docket No. 144 at 3-4.  However, these public disclosures are not referenced in the complaint, and defendant makes no argument regarding how the Court could consider them at the motion to dismiss stage without converting the motion into one for summary judgment.  *See id.*  Accordingly, the Court declines to consider these additional public disclosures which were neither raised in the motion to dismiss nor the complaint.  *Cf. Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) ("[I]f a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has *discretion* to consider such materials." (emphasis added)).

**C.  Original Source**

The FCA instructs courts to dismiss a *qui tam* action that is substantially similar to public disclosures "*unless* . . . the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A) (emphasis added).  An original source

> means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730(e)(4)(B); *see also Reed*, 923 F.3d at 756-58 (noting that the "materially adds" inquiry must remain conceptually distinct from "substantially-the-same" inquiry or else the original source exception would be rendered meaningless).  Defendant argues that relator is not an original source because the consent decrees entered into by Aurora and defendant were publicly disclosed before this action and because relator's personal investigation of public disclosures adds nothing to the information the government already possessed.  Docket No. 137 at 8-9.  Relator responds that he qualifies as both types of original sources because there has been no public disclosure of defendant's fabrication of promissory notes and his investigation materially adds to any publicly disclosed allegations.  Docket No. 141 at 10.

"[A] relator who discloses new information that is sufficiently significant or important that it would be capable of 'influenc[ing] the behavior of the recipient'—i.e., the government—ordinarily will satisfy the materially-adds standard."  *Reed*, 923 F.3d at 757 (quoting *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016)).  However, the addition of "background information or details about a known fraudulent scheme" typically will not meet the standard.  *Id.*  The analysis of

whether a relator materially adds to the publicly disclosed transactions or allegations "must be firmly grounded in the facts and circumstances of a particular case. And those facts and circumstances will guide our determination of whether the who, what, when, where, or how actually should be considered sufficiently significant or important to affect the government's actions regarding the fraudulent scheme." *Id.* at 758.

Relator argues that he is an original source because the complaint contains 45 pages worth of evidence of defendant's fraud. Docket No. 141 at 10. The non-public facts that relator alleges are (1) a private call with an Aurora "Executive Communications" employee where the employee disclosed that Aurora did not own relator's loan and never intended to modify the loan because the investor was not accepting modifications; (2) that Aurora and defendant produced three contradictory versions of plaintiff's promissory note in foreclosure proceedings that were each allegedly endorsed by Lorraine Dodson; (3) the existence of a third version of relator's promissory note that had never been filed in public records or filed with the court; (4) the exposure of defendant's argument that it had no records or knowledge of any forgeries or how the endorsements came into existence; (5) an affidavit obtained by relator from Lorraine Dodson, the endorser on relator's original loan documents, stating that she did not endorse the note to "Aurora Loan Services" or "Residential Funding Corporation"; (6) relator's experience in the mortgage industry; (7) an internal non-public record obtained by relator that showed that Aurora paid to endorse a note several days before filing a forged handwritten endorsed note on Aurora's behalf; and (8) an internal Nationstar agreement used to hold outside counsel accountable for taking and receiving original notes and allonges that defendant sent to counsel. *See* Docket No. 141 at 8-9 n. 4; Docket No. 136 at 32-33, ¶ 75. Relator argues that his 45

pages of "graphic images and actual copies of the multiple versions of the notes and endorsements that were filed in different courts relating to the *same* borrowers' notes in various foreclosure proceedings initiated by Nationstar" make him an original source under the public disclosure bar.  *See* Docket No. 141 at 10.

First, the Court finds that the information relator amalgamated from other foreclosure proceedings was public information that relator simply grouped together, and he is therefore not an original source of it.  *See United States ex rel. Kuriyan v. Health Care Servs. Corp.*, 2020 WL 8079811, at *11 (D.N.M. Sept. 9, 2020) ("Relator is barred if his claim was derived solely from second-hand knowledge.").  Second, the Court finds that the non-public information that relator provides concerning his own foreclosure is not the type of information that is capable of "influencing the behavior" of the government, and is simply details about his foreclosure within the fraudulent promissory note scheme that had been publicly disclosed.  *See Reed*, 923 F.3d at 757 (quoting *Winkelman*, 827 F.3d at 211).  Third, the non-public evidence that is not solely related to relator's foreclosure is his general familiarity with industry practices from working for a different mortgage company, an internal Aurora record that allegedly proves that Aurora paid an attorney to endorse a note several days before filing the forged handwritten note on Aurora's behalf, and an internal Nationstar agreement used to hold outside counsel accountable for taking and receiving original notes and allonges that defendant sent to counsel.  The Court finds that these disclosures are not sufficiently significant to influence the behavior of the government, and therefore that relator is not an original source.

Relator argues that the government would be

influenced by the knowledge that it gave hundreds of millions of dollars to

17

> Nationstar in exchange for its certifications that it has been, is presently and will continue to service residential mortgage loans in compliance with all applicable laws, rules, regulations, requirements and guidelines (SAC ¶ 201) when Nationstar was, and is, foreclosing on borrowers' homes with false, forged and fraudulent notes in blatant disregard for the associated borrowers, the government, the courts and all applicable laws.

Docket No. 141 at 12.  However, this argument misses the mark because the issue is not whether the government would be influenced by knowledge of the scheme as a whole, the issue is whether relator has knowledge that is independent of and materially adds to the public disclosures.  The Court has found that the existence of the fraudulent scheme was publicly disclosed.  Relator's knowledge that is independent of the public disclosures does not materially add to it because "a relator who merely adds background information or details about a known fraudulent scheme typically will be found not to have materially added to the publicly disclosed information."[6]  *Reed*, 923 F.3d at 757.

The Court finds that the allegations in the complaint are substantially similar to public disclosures and relator is not an original source of the information.  Accordingly, relator's claims for violation of the FCA, claim one for violating 31 U.S.C. § 3729(a)(1)(D) and claim two for violating 31 U.S.C. § 3729(a)(1)(C), are prohibited by the public disclosure bar and the Court will grant defendant's motion to dismiss.[7]

---

[6] Relator also argues that he is an original source under 31 U.S.C. § 3730(e)(4)(B)(i), which states that a person is an original source who, "prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based."  Docket No. 141 at 10.  However, the Court has found that the consent decrees are substantially similar and that the complaint is based on them, and thus rejects relator's argument that he is an original source under this prong.

[7] Because the Court finds that the public disclosure bar applies, the Court does not address defendant's arguments that the second amended complaint fails under Fed. R. Civ. P. 9(b) and fails to plead all the elements of an FCA violation.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Nationstar Mortgage LLC's Motion to Dismiss [Docket No. 137]

is **GRANTED**.  It is further

**ORDERED** that the second amended complaint [Docket No. 136] is

**DISMISSED**.  It is further

**ORDERED** that this case is closed.

DATED September 15, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge